UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AMLI MANAGEMENT COMPANY, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02034-JMS-MJD |
| | ) | |
| NEXUS VALVE, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

## ORDER

Plaintiff Amli Management Company ("Amli") manages the AMLI River North apartment building located at 17 West Hubbard Street in Chicago, Illinois ("the Building"). River North Devco, LLC ("River North") owns the Building, and Amli, which has an ownership interest in River North, acts as River North's agent pursuant to a Master Property Management Agreement ("the Agreement"). Amli alleges that on August 8, 2018, a ball valve designed by Defendant Nexus Valve, Inc. ("Nexus") and contained within a fan coil unit manufactured by Nailor Industries ("Nailor"), failed and caused the HVAC system in the Building to leak, which led to flooding in parts of the Building. Amli alleges that the Building sustained $986,141.27 in damages. Presently pending are two motions filed by Nexus – a Motion to Stay, [Filing No. 18], and a Motion to Dismiss, [Filing No. 16]. Both motions are now ripe for the Court's decision.

## I.
### BACKGROUND

#### A.    The Building and Its HVAC System

The Building was built in March 2013, and Amli is responsible for its overall management, including maintenance, repair, marketing, leasing, staffing, hiring of contractors and service

companies, performing financial operations, and maintaining insurance. [Filing No. 7 at 2-3.][1]
The Building was designed and constructed with fan coil assemblies incorporated into the HVAC
systems used to provide heating and air conditioning to the apartments within the Building. [Filing
No. 7 at 3.] The fan coil assemblies are Nailor Vertical Hi-Rise Fan Coil Units ("Fan Coil Units"),
and included ball valves which were designed, specified, packaged, manufactured, tested,
inspected, sold, and distributed by Nexus. [Filing No. 7 at 3.]

### B.   The Flood

On August 8, 2018, the ball valve in a Fan Coil Unit fractured, failed, and leaked, causing
water to escape from the HVAC system and leak into Apartment 2506 in the Building ("the
Flood"). [Filing No. 7 at 4.] As a result of the Flood, the Building sustained damages totaling
$986,141.27. [Filing No. 7 at 4.]

### C.   Insurance Coverage

Amli and River North were covered by a manuscript property insurance program ("the
Program") for certain damages resulting from the Flood. [Filing No. 7 at 4.] The Program was
subject to a $250,000 deductible, which was not reimbursed by any insurance company. [Filing
No. 7 at 4.]

### D.   The Agreement and the Assignment

The Agreement between Amli and River North allows Amli to institute legal proceedings
on behalf of the Building with the approval of River North. [Filing No. 7 at 3.] River North has
approved the initiation of the claims set forth in this action, and has assigned its rights and

---

[1] This background information is taken from Amli's First Amended Complaint – the operative
complaint in this case. As discussed below, the Court accepts as true Amli's allegations for
purpose of deciding Nexus's Motion to Stay and Motion to Dismiss.

obligations arising from the Flood to Amli pursuant to an Assignment Agreement ("the Assignment").  [Filing No. 7 at 3; Filing No. 7-1.]

### E.    The Illinois Lawsuit

On January 10, 2020, River North and Amli initiated a lawsuit in the United States District Court for the Northern District of Illinois against Nexus, Nailor, and Crown Energy Services, Inc., doing business as Able Engineering Services ("Able").  *River North Devco, LLC, et al. v. Nailor Indus. of Texas, Inc., et al.*, 1:20-cv-00192 (N.D. Ill.) ("the Illinois Lawsuit").  The Illinois Lawsuit relates to the Flood, and River North and Amli set forth negligence, product liability, breach of implied warranty of fitness for a particular purpose, and breach of implied warranty of merchantability claims against Nexus and Nailor, and negligence and breach of contract claims against Able related to Able's attempts to fix the leak, which allegedly caused the leak to flow throughout the Building for several hours.  [Filing No. 1 in the Illinois Lawsuit.]  On August 18, 2020, Nexus's Motion to Dismiss for lack of personal jurisdiction was granted in the Illinois Lawsuit, leaving Nailor and Able as the remaining defendants.  [Filing No. 55 in the Illinois Lawsuit.]

### F.    This Lawsuit

Fifteen days before Nexus was dismissed as a defendant in the Illinois Lawsuit, River North and Amli initiated this lawsuit against Nexus, asserting identical claims against Nexus as those initially raised against Nexus and Nailor in the Illinois Lawsuit.  [Filing No. 1; Filing No. 1 in the Illinois Lawsuit.]   After this Court issued an Order regarding a jurisdictional issue with the Complaint, [Filing No. 4], Amli filed an Amended Complaint which eliminated River North as a plaintiff, [Filing No. 7].  In the Amended Complaint, Amli sets forth the following claims against

Nexus: (1) negligence; (2) product liability; (3) breach of implied warranty of fitness for a particular purpose; and (4) breach of implied warranty of merchantability. [Filing No. 7.]

### G. The Ratification Agreement

On September 23, 2020, Amli filed a Ratification Agreement in this action. [Filing No. 25-1.] The parties to the Ratification Agreement are Amli, as assignee of River North, and various insurers including ACE American Insurance Company, Various Underwriters at Lloyds London, Endurance American Insurance Company, Lexington Insurance Company, Allied World Assurance Company, Ltd., Landmark American Insurance Company, and Continental Casualty Company (collectively, "the Insurers"). [Filing No. 25-1 at 1.] The Ratification Agreement provides:

> As set forth in the Amended Complaint filed in this matter, [the Insurers] are partially subrogated to the claims of [Amli and River North] to the extent of Seven Hundred Thirty Six Thousand, One Hundred and Forty One Dollars and twenty seven cents ($736,141.27) which amount represents payments made to [River North and Amli] for the fair and reasonable insured value of the damages caused by [the Flood] which occurred at [the Building].... This amount was paid collectively by [the Insurers] pursuant to [the Program].
>
> As set forth in the Amended Complaint, [Amli and River North] also sustained [damages] totaling Two Hundred and Fifty Thousand Dollars ($250,000.00) that are not covered by any of these insurance coverages. The damages claimed in the above lawsuit include both the insured and uninsured damages arising from [the Flood]....
>
> Pursuant to Federal Rule of Civil Procedure 17 and other applicable law, and the policies of insurance issued to [Amli and River North] each of their insurers hereby ratify and agree that this present action may be pursued in the name of [Amli], as Assignees of [River North], that the action will include all of the insured and uninsured damages resulting from [the Flood], and that [the Insurers] agree to be forever bound by the results of the above action. In the event that the Court accepts this Ratification Agreement, [the Insurers] waive any rights to pursue their independent subrogation rights outside the above proceeding against any of the parties in this litigation and agree not to pursue any separate litigation or assert any claims against [Nexus] as a result of [the Flood].

[Filing No. 25-1 at 2-3.] The Ratification Agreement is signed by the Insurers. [Filing No. 25-1 at 4-9.]

## II.
### MOTION TO STAY [FILING NO. 18]

#### A.      Standard of Review

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 683 (1997) (recognizing that a "District Court has broad discretion to stay proceedings as an incident to its power to control its own docket"). "'A stay is not a matter of right, even if irreparable injury might otherwise result.'" *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). Instead, a court must exercise its discretion and evaluate the circumstances of the particular case. *Id.* (citations omitted). Specifically, a court should consider "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Am. Senior Communities, LLC v. Burkhart*, 2019 WL 415614, at *2 (S.D. Ind. 2019) (quoting *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Nken*, 556 U.S. at 433-34 (citations omitted).

#### B.      Discussion

In support of its Motion to Stay, Nexus relies on *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), and argues that the Court should consider "'the difficulties posed when a state and federal court concurrently assume jurisdiction over the same res; the

inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which the state and federal proceedings were filed.'" [Filing No.19 at 3 (quoting *Colorado River*, 424 U.S. at 818-19).] It asserts that the Illinois Lawsuit and this case are parallel because they involve the same causes of action and "nearly identical" allegations against Nailor and Nexus. [Filing No. 19 at 4.] Nexus contends that there does not need to be "formal symmetry" between the two actions, and that only "substantially the same parties" need be involved in both matters. [Filing No. 19 at 4.] It argues that the Illinois Lawsuit will resolve this lawsuit because Amli will "have the opportunity to explore the circumstances of the [ball valve's] alleged failure." [Filing No. 19 at 6.] Nexus states that ten factors the Court should consider when determining whether abstention is proper all weigh in favor of abstention, including that the Illinois Lawsuit was filed first; the Building is located in Illinois; there is a risk of inconsistent rulings and piecemeal litigation absent a stay; judicial resources will be duplicated absent a stay; Amli is an Illinois company; the lawsuit involves state law claims; and Amli may try to avoid unfavorable rulings in the Illinois Lawsuit by litigating in this Court. [Filing No. 19 at 6-11.]

In response, Amli argues that a federal court should abstain from exercising jurisdiction pursuant to *Colorado River* only in exceptional circumstances, none of which are present here. [Filing No. 24 at 3.] Amli asserts that the Illinois Lawsuit and this matter are not parallel proceedings because Nexus is not a party to the Illinois Lawsuit, and Nailor and Able are not parties to this lawsuit. [Filing No. 24 at 4-5.] Amli argues that Nexus does not provide legal authority extending *Colorado River* abstention to the situation where both lawsuits are pending in federal court, rather than one in federal court and one in state court. [Filing No. 24 at 4.] It contends that even if the cases were parallel, this case still should not be stayed because the resolution of the Illinois Lawsuit will not resolve Amli's claims against Nexus in this matter.

6

[Filing No. 24 at 5.]  Amli notes that "the reason the instant action was filed was because Nexus was dismissed from the Illinois Lawsuit due to a lack of personal jurisdiction."  [Filing No. 24 at 6.]

In its reply brief, Nexus argues that *Colorado River* abstention also applies where the two actions are both pending in federal court, and that the Illinois Lawsuit and this action "arise[ ] out of the same operative facts, contain[ ] the same allegations and contain[ ] the same legal issues." [Filing No. 27 at 3.]  Nexus also asserts that Amli "has alleged both Nexus and [Nailor] committed identical acts and owed [Amli] the same duty" in both lawsuits.  [Filing No. 27 at 5.]

Nexus appears to seek a stay under both *Colorado River* and the Court's inherent authority to stay cases.  The Court considers each basis in turn.

1.    Colorado River *Abstention*

Nexus primarily relies upon *Colorado River* abstention in support of its Motion to Stay.  A stay may be appropriate under *Colorado River* where "a concurrent state case is underway, but only under exceptional circumstances and only if it would promote wise judicial administration." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quotation and citation omitted).  By relying on *Colorado River* abstention, Nexus is trying to fit a square peg into a round hole.  *Colorado River* abstention takes place when a federal court declines to exercise jurisdiction because a state court is already considering a parallel action.  *See AXA Corp. Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (noting that the Supreme Court in *Colorado River* "cautioned that abstention is appropriate only in 'exceptional circumstances,'…and has also emphasized that federal courts have a 'virtually unflagging

obligation…to exercise the jurisdiction given them'") (quoting *Colorado River*, 424 U.S. at 817).[2] The Court views Nexus's request here as one for a stay of this case until the Illinois Lawsuit is resolved, and not one for this Court to decline to exercise jurisdiction in lieu of the Illinois federal court. Indeed, this Court and the Illinois court have the same subject matter jurisdiction.

In any event, even if *Colorado River* abstention were the proper focus here, Nexus's request does not get very far. In order for the Court to consider the ten factors discussed by Nexus, the two lawsuits must be parallel. *Freed*, 756 F.3d at 1018. Two lawsuits are considered parallel when "substantially the same parties are contemporaneously litigating substantially the same issues…. Precise formal symmetry is unnecessary. A court should examine whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues…. In essence, the question is whether there is a substantial likelihood that the [first] litigation will dispose of all claims presented in the [second litigation]…. Any doubt regarding the parallel nature of [the suits] should be resolved in favor of exercising jurisdiction." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498-99 (7th Cir. 2011).

It is undisputed that Nexus is a defendant in this case, but is no longer a defendant in the Illinois Lawsuit. Additionally, the defendants in the Illinois Lawsuit – Nailor and Able – are not parties to this lawsuit. Most significantly, the focus of the Illinois Lawsuit is whether the Fan Coil

---

[2] Nexus argues that Amli's assertion that *Colorado River* abstention only applies where there is a federal court action and a state court action "is false and is unsupported by federal case law." [Filing No. 27 at 2.] However, the only Seventh Circuit case Nexus cites for this proposition found that where there are parallel federal court cases, one of the cases "may be dismissed for reasons of wise judicial administration…whenever it is duplicative of a parallel action already pending in another federal court." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). Similarly, the district court case Nexus cites from within the Seventh Circuit also found that staying the case in favor of a parallel federal case was appropriate based on the court's "inherent power to stay proceedings." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). While both courts cited to a case that, in turn, cited *Colorado River*, they did not base their decisions on *Colorado River*.

Units manufactured by Nailor and/or the actions of Able in attempting to stop the leak caused the Flood. The focus of this lawsuit is whether the ball valves manufactured by Nexus, which were part of the Fan Coil Units, caused the Flood. These two focuses are distinct, and a finding of liability on the part of Nailor and/or Able does not determine whether Nexus is also liable. Put simply, this lawsuit and the Illinois Lawsuit are not parallel proceedings such that a stay of this action is appropriate under *Colorado River*.

### 2.   The Court's Inherent Authority to Stay This Case

In light of the Court's finding that this lawsuit and the Illinois Lawsuit are not parallel proceedings, a consideration of the factors the Court should consider in determining whether to exercise its inherent authority to stay the case is straightforward. *See Am. Senior Communities, LLC*, 2019 WL 415614, at *2 (court should consider "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court"). First, a stay of this case could prejudice Amli or cause a tactical disadvantage. Awaiting resolution of the Illinois Lawsuit could mean a delay of several years, which may be prejudicial to Amli's ability to gather evidence and prove its claims. Second, a stay will not simplify the issues in this case or streamline the trial. As discussed above, the issue of Nexus's liability is wholly separate and distinct from Nailor's and Able's liability – the only parties whose liability will be addressed in the Illinois Lawsuit. Third, a stay will not reduce the burden of the litigation on the parties or the Court. Nexus's liability would still need to be determined in this lawsuit. Finally, it is worth noting the events that have brought the parties to this point. Specifically, while Nexus insinuates that Amli "engaged in litigation with Nailor and Able [in the Illinois Lawsuit] and have also, contemporaneously, filed a lawsuit against Nexus [in this Court],"

[Filing No. 19 at 2-3], the reality is that the Northern District of Illinois did not have personal jurisdiction over Nexus, and Nexus did not willingly submit to jurisdiction, necessitating this lawsuit. This is not a situation where Amli chose to file two different federal lawsuits from the beginning. Amli is entitled to bring suit against Nexus here since it cannot determine Nexus's liability in the Illinois Lawsuit, just as Nexus was entitled to seek dismissal from the Illinois Lawsuit.

In sum, a stay of this case is not warranted under *Colorado River* abstention – which the Court finds does not apply to the circumstances of this case – nor based on the Court's inherent power to stay this case. Nexus's Motion to Stay, [Filing No. 18], is **DENIED**.

### III.
### MOTION TO DISMISS [FILING NO. 16]

#### A.    Standard of Review

Nexus seeks dismissal of this matter under Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) "allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When deciding a motion to dismiss under Rule 12(b)(1), the Court accepts the allegations in the plaintiff's complaint as true and draws all reasonable inferences in the plaintiff's favor. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The burden is on the plaintiff to prove, by a preponderance of the evidence, that subject matter jurisdiction exists for its claims. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

#### B.    Discussion

In its Motion to Dismiss, Nexus argues that the Insurers are the real parties in interest in this matter and not Amli, and that Amli does not have standing. [Filing No. 17 at 4.] Nexus notes that Amli "has indicated that there are multiple entities that 'own' portions of the substantive right"

to collect damages in this case, including Chubb/ACE American Insurance Company ("ACE"). [Filing No. 17 at 5.] Nexus asserts that ACE "is a real party in interest because it ha[s] either paid the entire claim (and is therefore the only real party in interest under Fed. R. Civ. P. 17) or it is partly subrogated and should appear in its own name." [Filing No. 17 at 6.] Nexus contends that Amli "has not met its burden of providing any evidence that its insurer agreed to be bound to the results of the present litigation…." [Filing No. 17 at 6.]

Amli argues in its response that the concepts of having standing and being a real party in interest are distinct. [Filing No. 25 at 3.] It argues further that it has standing because it was injured by sustaining damages of $986,141.27 ($250,000 of which was uninsured), that it has plausibly alleged that the damages were caused by Nexus, and that the damages it seeks would remedy its injury. [Filing No. 25 at 3.] Amli also asserts that it is a real party in interest because "this action does not subject Nexus to any other litigation by any other party who may be entitled to a recovery for the damages to [the Building from the Flood] because those parties have ratified this action." [Filing No. 25 at 4.] Amli further contends that the existence of subrogated parties – here, the Insurers – does not require dismissal if those subrogated parties are not parties to the lawsuit, and that "Indiana substantive law allows an insured to seek a recovery for an entire property loss in its own name when its losses were subject to a deductible." [Filing No. 25 at 4.] Finally, Amli argues that Nexus does not face a risk of a subsequent action by the Insurers because the Ratification Agreement provides that the Insurers will not pursue a separate action against Nexus arising from the Flood, and that the Ratification Agreement did not need to be accompanied by an affidavit. [Filing No. 25 at 6.]

Nexus argues in its reply that Amli has not established that it is a real party in interest because it has not identified the subrogated insurance companies or the amounts each paid, and

11

has not "presented any evidence regarding its alleged $250,000 deductible payment" or any evidence indicating under which insurance policy the deductible was paid.  [Filing No. 26 at 3.] Nexus reiterates its argument that the Insurers are the real parties in interest, and asserts that the Ratification Agreement "fails to alleviate Nexus from exposure to subsequent litigation" because tenants of the Building could also sue Nexus.  [Filing No. 26 at 4.]

### 1.   Standing

In order to establish standing under Article III of the United States Constitution, Amli must demonstrate: "(i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relation between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision." *Reid L. v. Ill.  State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004) (quotation and citation omitted).

Amli has plausibly alleged that it was injured when it paid the $250,000 deductible due to the Flood, that the damages from the Flood were caused by Nexus, and that an award of monetary damages would remedy Amli's damages.  The Court finds that Amli has standing to pursue this action.

### 2.   Real Party In Interest

Under Indiana law,[3] when an insurer pays an entire claim to its insured pursuant to an insurance policy, the insurer is the real party in interest. *Whiteco Indus., Inc. v. Non-Stop Creativity*

---

[3] Nexus asserts that Indiana law applies to the issues of whether Amli has standing to bring this lawsuit and whether Amli is a real party in interest.  [See Filing No. 17 at 4.]  Amli appears to agree, citing to Indiana cases in its response brief.  [See, e.g., Filing No. 25 at 4.]  Absent a disagreement, the Court will apply Indiana law. *Mass. Bay Ins. Co. v. Vic Koenig Leasing*, 136 F.3d 1116, 1120 (7th Cir. 1998); *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991)

*Corp.*, 2015 WL 8957852, at \*2 n.3 (N.D. Ind. 2015).  But "Indiana allows an insured to sue in its own name when the insured had to pay a deductible to the insurer." *Id.*; *see also Steury v. N. Ind. Pub. Serv. Co.*, 510 N.E.2d 213, 215 (Ind. Ct. App. 1987) (where insured paid $100 deductible, it could sue in its own name for full amount of loss and distribute a proportion of the proceeds to insurer); *Risner v. Gibbons*, 197 N.E.2d 184, 185-86 (Ind. Ct. App. 1964) (same principle).

Here, Amli is a real party in interest because it paid the $250,000 deductible.  *See United States v. Aetna Cas. & Sur. Co.,* 338 U.S. 366, 380-81 (1949) (when insurer "paid only part of the loss, both the insured and insurer…have substantive rights against the tortfeasor which qualify them as real parties in interest").  The question then becomes whether Amli is obligated to join the Insurers as plaintiffs.  Federal Rule of Civil Procedure 17 provides that "[a]n action must be prosecuted in the name of the real party in interest.  The following may sue in their own names without joining the person for whose benefit the action is brought:…a party with whom or in whose name a contract has been made for another's benefit…."  Fed. R. Civ. P. 17(a)(1)(F).  Rule 17 further states that:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.  After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).

Under Indiana law, when an insurance policy does not completely cover a loss – for example, when the insured is responsible for paying a deductible – "the insured may sue in [its]

---

("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits….  Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.  We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them)").

own name and recover the full amount of the loss, the question of the distribution of the proceeds being a matter between the insurer and insured only." *Steury*, 510 N.E.2d at 215; *see also Whiteco Indus.*, 2015 WL 8957852, at *2 n.3. In any event, even if Amli were required to join the Insurers as plaintiffs, the Court cannot dismiss this matter based on a failure to join due to the Ratification Agreement. *See* Fed. R. Civ. P. 17(a)(3). There is no dispute that the Insurers have agreed in the Ratification Agreement to allow Amli to pursue this action, to be bound by its results, and to waive any subrogation rights that they may have related to the Flood. [Filing No. 25-1.] Nexus's arguments that the Ratification Agreement is insufficient because it does not identify the specific entity, person, or property covered by each of the ten insurance policies, and because it is not accompanied by an "Affidavit of Ratification," are meritless. Nexus has not presented any legal authority supporting the proposition that such information is needed, or that Amli was required to include an affidavit with the Ratification Agreement. To the extent that the Insurers' ratification was required in the first instance, the Ratification Agreement satisfies that requirement under Fed. R. Civ. P. 17(a)(3).[4]

Under well-settled Indiana law, Amli – as an insured who paid a portion of the loss through the deductible – is a real party in interest and may bring this lawsuit with or without the Insurers joining in as Plaintiffs. Moreover, to the extent joinder was required, the Ratification Agreement provides that the Insurers agree to allow Amli to pursue their interests in this litigation and to be bound by the results. Nexus's Motion to Dismiss is **DENIED**. [Filing No. 16.]

---

[4] Nexus also argues that Amli "has not set forth any evidence that the tenants of [the Building], who may have a claim due to the flooding, agreed to be bound by the results of this litigation." [Filing No. 26 at 4.] Amli is under no obligation to track down every potential party that may seek redress from Nexus due to the Flood, and include them in this litigation. This argument borders on frivolous.

## IV.
### CONCLUSION

For the foregoing reasons, Nexus's Motion to Stay, [18], is **DENIED** and its Motion to

Dismiss, [16], is **DENIED**.

Date: 12/9/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**